**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TORRELL SAXON,

                              PETITIONER,

              vs.                                        13 Civ. 4966 (ER)
                                                         14 Civ. 733 (ER)

UNITED STATES OF AMERICA,

                              RESPONDENT.


**PETITIONER'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO VACATE,**
**SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

FACTS ...................................................................................................................3

ARGUMENT ..........................................................................................................7

I.     TRIAL COUNSEL DID NOT PROVIDE CONSTITUTIONALLY EFFECTIVE
REPRESENTATION.....................................................................................7

        A.     Trial Counsel Failed To Research Whether Saxon Was ACCA-Eligible................8

        B.     The Failure To Challenge Mr. Saxon's ACCA Eligibility Was Not a
Reasonable Strategic Decision.............................................................13

II.    MR. SAXON WAS PREJUDICED BY TRIAL COUNSEL'S DEFICIENT
PERFORMANCE. .....................................................................................15

CONCLUSION......................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Miller*, 500 F.3d 149 (2d Cir. 2007) ...........................................................7, 13

*Cornell v. Kirkpatrick*, 665 F.3d 369 (2d Cir. 2011) ...............................................7, 13

*Cox v. Donnelly*, 387 F.3d 193 (2d Cir. 2004)...............................................................15

*Cox v. Donnelly*, 432 F.3d 388 (2d Cir. 2005).............................................................13

*DeLuca v. Lord*, 858 F. Supp. 1330 (S.D.N.Y. 1994) ...................................................13

*Garcia v. Portuondo*, 459 F. Supp. 2d 267 (S.D.N.Y. 2006) .........................................7

*Gonzalez v. United States*, 722 F.3d 118 (2d Cir. 2013) ........................................15, 18

*Hernandez v. United States*, No. 92 CIV. 7232 (CSH), 1992 WL 331137 (S.D.N.Y. Oct. 30, 1992) .....................................................................................................................8

*Hill v. Lockhart*, 474 U.S. 52 (1985) .............................................................7, 15, 19

*Jackson v. Leonardo*, 162 F.3d 81 (2d Cir. 1998) ..........................................................3

*Johnson v. United States*, 313 F.3d 815 (2d Cir. 2002).................................................12

*Knight v. United States*, 576 F. App'x 4 (2d Cir. 2014) ...............................................15

*Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ......................................................................6

*Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001) ........................................................15

*Mask v. McGinnis*, 233 F.3d 132 (2d Cir. 2000) .........................................................17

*Massaro v. United States*, 538 U.S. 500 (2003).............................................................3

*Mayo v. Henderson*, 13 F.3d 528 (2d Cir. 1994) .........................................................13

*McNeill v. United States*, 131 S.Ct. 2218 (2011).........................................................10

*Moore v. Bryant*, 348 F.3d 238 (7th Cir. 2003) ..........................................................16

*Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008)...............................................7, 15

*People v. Paulin*, 17 N.Y.3d 238 (2010).........................................................................9

*Rivera v. United States*, 716 F.3d 685 (2d Cir. 2013)..................................................11

*Rompilla v. Beard*, 545 U.S. 374 (2005)................................................................13

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................7, 8, 14, 15

*United States v. Calix*, No. 13 cr. 582 (RPP), 2014 WL 2084098 (S.D.N.Y. May 13, 2014) ..................................................................................................1, 12

*United States v. Darden*, 539 F.3d 116 (2d Cir. 2008) ..................................11

*United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998)..................................17

*United States v. Jackson*, No. 13 Cr. 142 (PAC), 2013 WL 4744828 (S.D.N.Y. Sept. 4, 2013) ..................................................................................................1, 12

*United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007) ................................11

*Wieland v. Buss*, 185 F. App'x 527 (7th Cir. 2006)........................................16

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................................13

*Williams v. United States*, No. 14-CV-0829 (KMW), 2015 WL 710222 (S.D.N.Y. Feb. 19, 2015) ..................................................................................................16

**Statutes & Rules**

18 U.S.C. § 922(g)(1) ......................................................................................4

18 U.S.C. § 924(a)(2).......................................................................................2

18 U.S.C. § 924(e) ...................................................................................1, 4, 9

18 U.S.C. § 924(e)(1).......................................................................................1

18 U.S.C. § 924(e)(2)(A)..................................................................................9

21 U.S.C. § 841(b)(1)(C)..................................................................................5

21 U.S.C. § 841(b)(1)(E)(2)..............................................................................5

28 U.S.C. § 2255(b) .........................................................................................3

N.Y. Crim. Proc. Law § 440.46 (2009) .....................................................1, 10

N.Y. Penal Law § 70.00 (1996) .......................................................................1

N.Y. Penal Law § 70.70(2)(a)(i) (2004) ..................................................1, 9, 10

Rule 8 of the Rules Governing § 2255 Cases .................................................3

**Other Authority**

U.S. Sentencing Guidelines Manual .............................................................................................2

**PRELIMINARY STATEMENT**

Torrell Saxon was convicted of distribution and possession with intent to distribute oxycodone (a Schedule II controlled substance) and alprazolam and clonazepam (Schedule IV controlled substances), and sentenced to 10 years' imprisonment. (Judgment, ECF No. 26, *United States v. Saxon*, No. 12-Cr.-320 (July 25, 2013).) The conviction and sentence were the culmination of what Mr. Saxon's trial counsel told this Court was an "unusual and aggressive" defense strategy to avoid what she believed was a mandatory minimum 15-year sentence. (Ex. A (Dec. 9, 2013 Trial Counsel Aff.) ¶ 6.)[1] As shown below, that strategy was not just unusual but constitutionally deficient because trial counsel was wrong: Mr. Saxon was never actually subject to a 15-year mandatory minimum sentence.

Mr. Saxon was originally indicted for being a felon-in-possession of a firearm, and the Indictment charged that he was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on his "three previous convictions for a violent felony or serious drug offense." (Indictment, ECF No. 4, *United States v. Saxon*, No. 12-Cr.-320 (Apr. 23, 2012).) Based on the Indictment, Mr. Saxon faced a 15-year mandatory minimum sentence and a maximum possible sentence of life in prison. 18 U.S.C. § 924(e)(1). The ACCA charge in the Indictment, however, was defective because the maximum sentence for Mr. Saxon's prior drug offense had subsequently been reduced to less than 10 years, N.Y. Penal L. § 70.70(2)(a)(i) (2004), and that reduction had been made retroactive, N.Y. Crim. Proc. L. § 440.46(1) (2009). Thus, as courts in this District have recognized, Mr. Saxon's drug offense was not properly deemed a "serious drug offense" under ACCA. *United States v. Calix*, No. 13 Cr. 582 (RPP), 2014 WL 2084098, at *13, 15 (S.D.N.Y. May 13, 2014); *United States v.*

---

[1] All references to "Ex. __" refer to the exhibits to the Declaration of M. Brent Byars filed together with this Brief.

*Jackson*, No. 13 Cr. 142 (PAC), 2013 WL 4744828, at *3, *6 (S.D.N.Y. Sept. 4, 2013).

Mr. Saxon, therefore, had been convicted of only two ACCA predicates, and without the ACCA

enhancement Mr. Saxon did not face a mandatory minimum 15-year sentence, but rather a

statutory *maximum* of 10 years with a corresponding Guidelines range of 70 to 87 months after a

guilty plea. *See* 18 U.S.C. § 924(a)(2); U.S. Sentencing Guidelines Manual § 2K2.1.

   Mr. Saxon's trial counsel failed to recognize this defect in the Indictment, and

instead advised Mr. Saxon that his best chance to avoid the 15-year mandatory minimum

sentence was to provide an innocence proffer to the U.S. Attorney's Office. (Ex. A ¶ 5 ("Our

goal was to convince the government that the gun charge was problematic enough for them that

they should offer Mr. Saxon a plea to the pills that he admitted to selling—which, in fact, is

exactly the result that he got.").) At the proffer, Mr. Saxon would offer an alternative version of

the events leading up to his arrest, in which he would admit to possessing and distributing drugs

but explain that the gun found at the scene of his arrest was not his.

   Mr. Saxon followed his trial counsel's advice, and the U.S. Attorney's Office

agreed to drop the original charge—on the condition that Mr. Saxon plead guilty to two

additional counts. (Ex. B (Plea Agreement dated Dec. 21, 2012) at 1.) One count was for

distribution and possession with intent to distribute oxycodone, based on the information

Mr. Saxon provided during the innocence proffer and plea negotiations that he had sold

oxycodone pills during the months leading up to his arrest; the other was for distribution and

possession with intent to distribute alprazolam and clonazepam (Schedule IV controlled

substances), based on a pending state court charge against Mr. Saxon. (*Id*. at 1.) The two

charges to which Mr. Saxon pleaded guilty resulted in a Guidelines range of 151 to 188 months

based on his status as a "career offender." (*Id*. at 4.) This range exceeded the maximum

sentence Mr. Saxon would have faced on the original felon-in-possession charge with the sentencing enhancement properly stricken. This Court ultimately sentenced Mr. Saxon to 10 years, which was almost three years higher than the *top* of the Guidelines range Mr. Saxon would have faced had he simply pleaded guilty to the non-enhanced felon-in-possession charge.

For these reasons, and for the reasons set forth in Mr. Saxon's *pro se* motions, Mr. Saxon respectfully requests that his motion to vacate his conviction and set aside his guilty plea be granted. *See Jackson v. Leonardo*, 162 F.3d 81, 86 (2d Cir. 1998) (where there is "no plausible explanation for an attorney's actions," no hearing is required to grant relief). In the alternative, pursuant to 28 U.S.C. § 2255(b) and Rule 8 of the Rules Governing § 2255 Proceedings, Mr. Saxon respectfully requests that the Court schedule an evidentiary hearing on his ineffective assistance of counsel claim.[2]

### FACTS

On the night of March 25, 2012, police officers were dispatched to a residence on North Street in Middletown, New York in response to a 911 call. (Ex. D (Tr. of Sentencing) at 4:8-10.) When the police arrived, they found Mr. Saxon on the ground, being held down by several men inside. (*Id*.) A handgun was found at the scene. (*Id* at 4:11-13.) Other men present

---

[2] During proceedings before this Court, Mr. Saxon also has asserted an ineffective assistance of counsel claim based on trial counsel's failure to file a notice of appeal from his conviction after he asked her to do so. Notwithstanding counsel's affirmation that Mr. Saxon's statement that he asked her to file a notice of appeal "is a lie" (Ex. C (Apr. 4, 2014 Trial Counsel Aff.) ¶ 2), recorded calls between Mr. Saxon and counsel confirm that he requested her to file a notice of appeal and that she agreed to do so (5/31/13 Call ("COUNSEL: I can file the Notice of Appeal if you want. SAXON: Yeah . . . Could you please put that in, please? COUNSEL: Yes. . . . it'll go in. Let me just make a note to myself so I make sure I do it. SAXON: And that has to be done in 15 days? COUNSEL: Yeah. I'll get the Notice of Appeal in, okay? SAXON: All right."). In any event, that claim is moot given that Mr. Saxon had himself filed a timely *pro se* notice of appeal. Mr. Saxon presses his remaining ineffective assistance of counsel claim in this Court rather than in the Court of Appeals because this is the "preferable" forum for such claims, especially when, as here, the evidence supporting the claim is not included in the record under review on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

at the scene told the police that Mr. Saxon had entered the home with the gun, pointed it at one

man and then shot it in the direction of another.  (*Id.* at 3:15-4:1.)  Based on that information, the

Middletown police arrested Mr. Saxon.  Mr. Saxon was subsequently transferred to federal

custody and charged in an Indictment with being a felon-in-possession of a firearm, under

18 U.S.C. § 922(g)(1).  The Indictment also charged that, because he had previously been

convicted of three or more violent felonies or serious drug offenses, Mr. Saxon was subject to the

enhanced sentencing provided by ACCA, 18 U.S.C. § 924(e).  Two of Mr. Saxon's prior

convictions (both in 2000) were for violent felonies, and one was a 1996 Class B felony for

criminal sale of a controlled substance in the third degree in New York.  (Ex. B at 4.)

An attorney from the White Plains office of the Federal Defenders of New York

was appointed to represent Mr. Saxon, who pleaded not guilty at his arraignment.  (Apr. 25, 2012

Docket Entry, *United States v. Saxon*, No. 12 Cr. 320 (ER).)  Mr. Saxon was detained, and calls

between him and his trial counsel were recorded.  (Byars Decl. ¶ 4.)[3]  During these calls, trial

counsel advised Mr. Saxon, among other things, that there were weaknesses in the Government's

case that could result in an acquittal at trial.  (*See, e.g.*, 12/19/12 Call.)  For example, trial

counsel noted that the Middletown police did not conduct a thorough investigation of the crime

scene, failing to account for all of the bullets the Government claimed had been fired from the

gun Mr. Saxon was alleged to possess.  (4/15/13 Call.)  However, trial counsel repeatedly

warned Mr. Saxon that, if convicted of the felon-in-possession charge, he faced a mandatory

minimum of 15 years and up to the statutory maximum of life in prison.  (*See, e.g.*, 12/17/12

Call; 5/29/13 Call; 6/18/13 Call.)

---

[3] Each of the quotations in this Supplemental Brief from these calls is an accurate transcription of
a call recorded on the date identified.  (Byars Decl. ¶ 4.)  Mr. Saxon will be prepared to submit
recordings of the relevant calls if the Government disputes Mr. Saxon's characterization of the
advice he received.

Based on the prospect of such a lengthy sentence if convicted, trial counsel advised Mr. Saxon to waive his Fifth Amendment right against self-incrimination and engage in an "innocence proffer," the contents of which the Government could use against Mr. Saxon in subsequent proceedings. At the proffer, Mr. Saxon admitted to possessing and distributing drugs, but told the prosecutors that the gun found at the scene was not his. After the proffer, trial counsel negotiated a plea deal with the U.S. Attorney's Office under which the felon-in-possession charge would be dismissed if Mr. Saxon would plead guilty to distribution and possession with intent to distribute oxycodone, in violation of 21 U.S.C. § 841(b)(1)(C), and possession with intent to distribute alprazolam and clonazepam, in violation of 21 U.S.C. § 841(b)(1)(E)(2). (Ex. B at 1-2.)[4] Although the oxycodone charge carried a statutory maximum of 20 years and a Guidelines sentence of 151 to 188 months, Mr. Saxon's trial counsel advised him that, based on her belief as to how this Court would view his offense, he could be sentenced to five years, if not less.[5] The Government also advised that it would still seek to prove to the

---

[4] Trial counsel persuaded Mr. Saxon to allocute to possessing and distributing approximately 300 pills even though Mr. Saxon consistently denied ever having that many. (*E.g.*, 1/23/13 Call ("COUNSEL: I know that you were pissed at me for having you say how much you sold when you said it was less . . . We had to do what we had to do.").)

[5] 12/19/12 Call ("I think I can keep you under 5 years. I don't think he's giving you more than 5 years."); *id.* ("I do not think that Edgardo Ramos is going to give you more than 5 years for selling a couple of pills to an undercover"); *id.* ("maybe a miracle will happen and I'll get you down to, like, 2 years, you know, because your guidelines—without the career offender, your guidelines are about 2½ year, 2, 2½ years"); 1/23/13 Call ("I think that you could get something under 5 [years]"); 5/22/13 Call ("[y]ou're Category 5. Even if you bump it up to a Category 6, the guidelines are just under 5 years. So I say, judge, look at the real—forget, forget the whole, you know, criminal thing, you know, you don't have to go there, judge; sentence him as if it was just normal guidelines. And so nobody has to get hysterical."); 5/29/13 Call ("I asked for 36 months at sentencing, I could really live with 48"); 5/29/13 Call ("I feel him out, you know, I'm going to tell him, like, you know, 3 to 4 years, truthfully, is the probably the range you should be in. And frankly, you know, 3 would be great. I could live with 4. And that's really, you know, where we should be. And we'll see what he does, you know."). Trial counsel also told Mr. Saxon that the AUSA agreed that he should receive "4 or 5 years." (12/19/12 Call.)

Court for sentencing purposes, at a hearing pursuant to *United States v. Fatico*, that Mr. Saxon possessed a gun on the night in question. (Ex. B at 3 ¶ 8.) Although trial counsel's prediction of Mr. Saxon's potential sentence increased after the Government requested a *Fatico* hearing on the gun, her estimate of Mr. Saxon's sentence never exceeded seven years.[6]

On April 4, 2013, after the Probation Office issued its Presentence Report ("PSR"), Mr. Saxon asked his counsel to move to withdraw his plea. (Ex. E (Apr. 4, 2013 handwritten notes) ("jail visit/review PSR. [Defendant] wants plea back").) Trial counsel requested a court conference. (Ex. F (Apr. 9, 2013 Hr'g Tr.) at 2:13-14, 5:1-4.) During that conference, trial counsel recounted that, after having reviewed his PSR, Mr. Saxon "express[ed] dissatisfaction to [her] for some amount of time with the plea that he took . . . but last Thursday [on April 4] for the first time [Mr. Saxon] actually asked to come into court to see if he could withdraw his plea." (*Id*. at 2:18-25.) On the day of the conference, after trial counsel advised him not to withdraw his guilty plea, Mr. Saxon rescinded his request to withdraw the plea. (*Id*. at. 3:3-14, 5:7-10 ("I did want to take my plea back, but after thinking everything over, I don't want to do it.").)

At sentencing, and after the *Fatico* hearing, this Court concluded that a sentencing enhancement based on Mr. Saxon's possession of a gun applied. (Ex. D at 6:21-23.) The Court concluded that the applicable Guidelines range was 151 to 188 months, and imposed a sentence of 10 years' imprisonment. (*Id*. at 8:19-21, 22:13-16.)

---

[6] 5/29/13 Call ("But let's say he gave you 7 and you were facing 15 to start, you know, you know, you wouldn't die from it. It wouldn't be terrible, it wouldn't be an amazing sentence. It would be a good sentence."); 5/29/13 Call (COUNSEL: "You're facing up to—it's a lot of time you're facing. . . . It could be 17 years. You're looking at up to 16 year, 17 years with your guidelines. . . . SAXON: "You said don't worry about that, right? You said don't worry about those, right? . . . . COUNSEL: "Well, I think. . . . that's hard to imagine. That, I would appeal that in a second.").

**ARGUMENT**

The Sixth Amendment guarantees effective assistance of counsel during the "critical stages" of a criminal proceeding, including "the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012). A plea agreement, including any agreement to waive appellate or collateral review, is unenforceable when it is not knowing and voluntary or results from ineffective assistance of counsel. *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008). An ineffective assistance of counsel claim is successful when the claimant shows: (1) defense counsel's performance was objectively unreasonable, and (2) the deficient performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Trial counsel's performance meets both prongs necessary for a showing of ineffective assistance of counsel.

I.     TRIAL COUNSEL DID NOT PROVIDE CONSTITUTIONALLY EFFECTIVE
       REPRESENTATION.

A criminal defendant's counsel is ineffective when "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When evaluating counsel's performance, courts "eliminate the distorting effects of hindsight" and presume that "'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 689). However, that presumption is not unbounded. *See id.* at 157 (presumption is overcome when "counsel's performance cannot fairly be attributed to a strategic decision arrived at by diligent counsel" (original alterations omitted)).

Mr. Saxon's trial counsel was constitutionally ineffective because she neglected to research the law pertinent to her client's case. *See Garcia v. Portuondo*, 459 F. Supp. 2d 267, 286 (S.D.N.Y. 2006) (failing to perform minimal research that "would have revealed" an

argument that counsel "fail[ed] to research and brief . . . f[alls] well below objective standards of reasonableness").  That error caused Mr. Saxon's trial counsel to overlook a likely meritorious motion challenging the Indictment's assertion that Mr. Saxon was ACCA-eligible.  *See Cornell v. Kirkpatrick*, 665 F.3d 369, 383 (2d Cir. 2011) (finding ineffective assistance where counsel "for no strategic reason, did not raise a likely meritorious challenge").  Furthermore, trial counsel's decision cannot fairly be attributed to a strategic decision:  there would have been no downside to filing a motion arguing that Mr. Saxon was not ACCA-eligible.  Even if the motion had failed (which it likely would not have), it would not have precluded Mr. Saxon from negotiating precisely the same plea deal he ultimately received.

### A.   Trial Counsel Failed To Research Whether Saxon Was ACCA-Eligible.

The touchstone of competent representation is one that is informed by the relevant law and facts.  *See Strickland*, 466 U.S. 668 at 690.  It is no surprise then that courts have found counsel to be constitutionally deficient when they performed insufficient legal research and instead simply accepted the representations of the Government on an important issue in a defendant's case.  *See Hernandez v. United States*, No. 92 CIV. 7232 (CSH), 1992 WL 331137, at *2 (S.D.N.Y. Oct. 30, 1992) ("[F]ailure to research the applicable law and challenge the Assistant United States Attorney's construction of the law rises to the level of ineffective assistance of counsel.").

Early in her representation, Mr. Saxon's trial counsel correctly recognized that the most important issue in Mr. Saxon's case was the Government's allegation that Mr. Saxon was subject to the 15-year statutory minimum under ACCA.  (*See* Ex. A (Dec. 9, 2013 Trial Counsel Aff.) ¶ 4 ("From the start, my conversations with Mr. Saxon—and there were many—centered on the strength of his defense, and the risks of trial because of the mandatory minimum.").)  However, even though trial counsel identified ACCA as the key factor driving Mr. Saxon's

sentencing exposure, she did nothing to assess the Government's position that the 15-year statutory minimum actually applied to Mr. Saxon. Indeed, there is no indication in trial counsel's case file that she performed any legal research on this issue. (Byars Decl. ¶ 3.) Had trial counsel performed even the most basic research concerning the critical issue in this case, she would have discovered the likely meritorious argument that Mr. Saxon was not subject to ACCA's statutory minimum.

For the Government to support an ACCA enhancement, it must prove, as relevant here, that the defendant was convicted of three separate "serious drug offense[s]" or "violent felon[ies]." 18 U.S.C. § 924(e). To prove the required three prior predicate crimes, the Government relied on Mr. Saxon's two robbery convictions (in August and October 2000), as well as a 1996 New York State conviction for criminal sale of a controlled substance in the third degree, a Class B felony. Under ACCA, a drug offense qualifies as "serious" only if "a maximum term of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A). When Mr. Saxon was convicted of that drug offense, the maximum term of imprisonment for that crime was 25 years, N.Y. Penal Law § 70.00 (1996), although he received the minimum sentence of one to three years. At the time of his 1996 drug conviction, Mr. Saxon's crime therefore qualified as an ACCA predicate.

Beginning in 2004, however, New York enacted the Drug Law Reform Acts ("DLRAs"), a series of well-publicized, significant reforms of New York's Rockefeller Drug Laws. Those enactments were designed to "grant relief from what the Legislature perceived as the inordinately harsh punishment for low level non-violent drug offenders' that the Rockefeller Drug Laws required." *People v. Paulin*, 17 N.Y.3d 238, 244 (2010) (quotations marks omitted). One significant feature of the DLRAs was the reduction of the maximum term of imprisonment

for Class B drug felonies (for first-time felons, as Mr. Saxon was) to nine years.  N.Y. Penal Law § 70.70(a)(2)(i) (2004).  This had the result of rendering such crimes not "serious" within the meaning of ACCA.

Thus, the most important issue facing Mr. Saxon at the time of his Indictment was whether New York's pre- or post-DLRA drug laws governed his ACCA-eligibility.  One-and-a-half years earlier, the Supreme Court issued its decision in *McNeill v. United States*, holding that "the 'maximum term of imprisonment' for a defendant's prior state drug offense is the maximum sentence applicable to his offense when he was convicted of it."  131 S.Ct. 2218, 2220 (2011).  But the Supreme Court further noted that the general rule it announced does not "concern a situation in which a State subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense."  *Id*. at 2224 n.1.  Mr. Saxon's Class B drug felony fell squarely within that exception to *McNeill's* holding.  *First*, the DLRAs reduced to nine years the maximum term of imprisonment authorized for Class B drug felonies for first-time felons; thus, Mr. Saxon's drug offense no longer constituted a "serious drug crime" under ACCA.  *See* N.Y. Penal Law § 70.70(a)(2)(i) (2004).  *Second*, the DLRAs provided that Class B offenders who had been sentenced under the old Rockefeller Drug Laws could petition to be re-sentenced under the new sentencing scheme.  *See* N.Y. Crim. Proc. Law § 440.46 (2009).  Accordingly, as provided by *McNeill*, the State had "ma[d]e that reduction available to defendants previously convicted and sentenced for that offense."  *McNeill*, 131 S.Ct. at 2224 n.1.

Indeed, the exception to the general *McNeill* rule was supported by the Solicitor

General's brief in that case, which conceded that:

> Of course, if a State subsequently lowered the maximum penalty and made that reduction available to defendants previously sentenced as of the same date as the defendant now at issue, *the defendant could plausibly look to that reduced maximum as stating the law applicable to his previous conviction*.

(Br. for the United States, *United States v. McNeill*, 2011 WL 1294503, at *18 n.5 (emphasis

added).) This brief was readily available to trial counsel, as it was cited in the decision itself.

Accordingly, constitutionally effective counsel would have recognized the likely meritorious

argument that Mr. Saxon's drug offense was not an ACCA-qualifying predicate and that the 15-

year statutory minimum did not apply to his case.[7]

Trial counsel was not aware of this crucial Supreme Court precedent because she

did not question the Government's position that Mr. Saxon was subject to ACCA. In an

affirmation submitted after Mr. Saxon filed his *pro se* motion for relief here, trial counsel

confirmed that she believed then and likely still believes today that the ACCA enhancement

applied. (Ex. A (Dec. 9, 2013 Trial Counsel Aff. ¶ 14 ("I told him I would suggest [to the Court]

a sentence in the 5-year range, but that 7, 8 or even 10 years was significantly better than the

mandatory 15 he had been facing."))) There is no justification for counsel not performing basic

legal research pertaining to the most critical issue facing her client. *See United States v. Mooney*,

---

[7] This is not a case in which an attorney's ignorance of a recent change in law could be deemed simple neglect. Rather, under the law as it existed before *McNeill*, lawyers representing potentially ACCA-eligible defendants would also have been expected to consider whether the DLRAs had modified the statutory maximum sentence for the ACCA predicate offenses. In *United States v. Darden*, 539 F.3d 116, 122 (2d Cir. 2008), the Second Circuit instructed district courts applying ACCA to look to state sentencing law as it existed at the time of the federal sentencing, even if state sentencing reductions were not made retroactive. While *Darden* did not survive *McNeill* in cases where the reform was not retroactive, *see Rivera v. United States*, 716 F.3d 685, 690 (2d Cir. 2013), the obligation of defense counsel to consider the impact of the DLRAs did survive in cases where the reform was retroactive.

497 F.3d 397, 404 (4th Cir. 2007) (finding performance was objectively unreasonable where "counsel's failure to investigate, which resulted in erroneous legal advice and legal representation, went to the heart of [defendant's] criminal liability").

Even before Mr. Saxon pleaded guilty in December 2012, other attorneys from the Federal Defenders of New York had argued to courts in this district that Class B felonies were not ACCA predicates. (Ex. G at 10 ("[Defendant]'s case fits squarely within the exception left open by footnote 1 of *McNeill*. Subsequent to his state convictions, New York amended state law to provide several ameliorative provisions to individuals convicted of class B felonies, including the lowering of the maximum sentence applicable to a first-time felony offender convicted of a class B felony to 9 years.") (Nov. 14, 2011)); *see also* Ex. H at 8 (arguing that Class C felonies are not ACCA predicates and noting "[t]his is not the first time the issue has arisen in a Southern District case") (Sept. 21, 2012).) And on May 14, 2013, less than a month after trial counsel dissuaded Mr. Saxon from attempting to withdraw his plea, another attorney at the Federal Defenders office made a motion arguing that Class B felonies like Mr. Saxon's are not ACCA predicates. (*See* Ex. I.) In September 2013, that district court ruled that the 15-year mandatory minimum sentence did not apply to the defendant's case, *Jackson*, 2013 WL 4744828, at *6, and the defendant subsequently pleaded guilty to a non-enhanced felon-in-possession charge and received a sentence of 46 months' imprisonment.[8] (Judgment, ECF No. 21, No. 13-Cr.-142 (Jan. 29, 2014).) The Government filed an appeal but later withdrew it. (Mandate, ECF No. 25, No. 13-Cr.-142 (June 2, 2014).)

---

[8] Similarly, in *United States v. Calix*, another court reached the same conclusion as in *Jackson*. 2014 WL 2084098, at *13, *15 (S.D.N.Y. May 13, 2014) (dismissing count of indictment charging ACCA eligibility). The court did so on the motion of another member of the Federal Defenders office. (Ex. J.)

Competent defense attorneys must present to the court arguments that are colorable and likely meritorious, and courts have consistently held that counsel is ineffective if it fails to argue for relief that is likely to succeed. *See, e.g.*, *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002). By failing to research her client's ACCA eligibility, counsel did not present the likely meritorious motion challenging the Government's position that Mr. Saxon was ACCA-eligible. Accordingly, counsel rendered ineffective assistance under *Strickland*.

**B.    The Failure To Challenge Mr. Saxon's ACCA Eligibility Was Not a Reasonable Strategic Decision.**

Trial counsel's decision not to research law relevant to her client's case and failure to argue that Mr. Saxon was not ACCA-eligible "cannot fairly be attributed to a 'strategic decision'" to which a court must defer. *Bell v. Miller*, 500 F.3d 149, 156-57 (2d Cir. 2007) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S. Ct. 2456 (2005)); *Cox v. Donnelly*, 432 F.3d 388, 390 (2d Cir. 2005) (finding it objectively unreasonable to forgo an argument without a strategic basis for doing so).

*First*, trial counsel did not make a strategic choice to omit the argument that Mr. Saxon was not ACCA-eligible. No strategic decision can be made if counsel does not perform the research necessary to be properly informed of her client's options. *See Cornell v. Kirkpatrick*, 665 F.3d 369, 380 (2d Cir. 2011) (finding the failure to research and the resulting omission of a plausible legal argument was objectively unreasonable); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) (failing to uncover mitigating evidence could not be justified by a decision to pursue a different strategy because that decision was made without the benefit of a thorough investigation).

*Second*, even if trial counsel made a strategic decision to forgo the crucial argument that Mr. Saxon's 1996 conviction was not a "serious drug offense," which does not

appear to have been the case, that decision was objectively unreasonable.  *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker"); *DeLuca v. Lord*, 858 F. Supp. 1330, 1346 (S.D.N.Y. 1994), *aff'd*, 77 F.3d 578 (2d Cir. 1996) ("even if the most well-intentioned lawyer earnestly pursues a strategy that he believes to be in the best interest of his client, an ineffective assistance of counsel claim will lie if that strategy is objectively unreasonable under professional norms").  There would have been no downside to presenting the argument that Saxon was not eligible for ACCA's 15-year statutory minimum.[9]  Even if that effort failed—which seems improbable in light of *McNeill* and subsequent decisions in this district—Mr. Saxon would have been left in the same position had he filed no motion.  Furthermore, there is no indication that the plea deal he ultimately accepted would not have been still available after making such a motion.

Given the options available to an attorney in trial counsel's position, it was unreasonable for her to proceed first with the innocence proffer—a strategy she told this Court was "unusual," "risky, and bold."  (Ex. K (Ltr. from trial counsel to this Court dated May 27, 2013) at 2.)  The innocence proffer came with no guarantee of success and, given the statements Mr. Saxon made during the innocence proffer would be used against him, it risked Mr. Saxon being charged with (and convicted of) both the felon-in-possession charge and a drug charge. Accordingly, trial counsel's performance fell outside the wide range of professional competence.

---

[9] There is no indication that the Government was pressing for a plea agreement with urgency that would have precluded the filing and resolution of such a motion.  Indeed, there was more than sufficient time to file such a motion.  Trial counsel had been appointed for Mr. Saxon when the Indictment was filed on April 23, 2012.  Mr. Saxon agreed to engage in an innocence proffer four months later and pleaded guilty four months after that.

II.     MR. SAXON WAS PREJUDICED BY TRIAL COUNSEL'S DEFICIENT
        PERFORMANCE.

Under *Strickland*'s second prong, prejudice is established where a defendant

demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the

context of plea agreements, the inquiry "focuses on whether counsel's constitutionally

ineffective performance affected the outcome of the plea process. In other words, in order to

satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty." *Hill*, 474 U.S. at

59; *see also Knight v. United States*, 576 F. App'x 4, 6 (2d Cir. 2014); *Gonzalez v. United States*,

722 F.3d 118, 128 (2d Cir. 2013).

The probability of prejudice required under this standard "lies between prejudice

that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome

of the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466

U.S. at 693); *see also Cox v. Donnelly*, 387 F.3d 193, 199 (2d Cir. 2004). Mr. Saxon satisfies

this burden, which is a less stringent standard than a preponderance of the evidence. *Strickland*,

466 U.S. at 693-94.

Relying solely upon trial counsel's mistaken assessment of his sentencing

exposure under ACCA, Mr. Saxon agreed to follow the "unusual and aggressive" strategy she

proposed, which culminated in him pleading guilty to a crime for which the Government

otherwise had no evidence and had not charged him.[10] Had Mr. Saxon been effectively advised,

---

[10] This case is therefore different from cases in which a defendant alleges ineffective assistance at
an earlier phase of the case that is unrelated to the defendant's eventual guilty plea. *See, e.g.*,
*Parisi*, 529 F.3d at 138-39 (holding that attorney's advice that a defendant enter into a plea
agreement rather than counseling him to move to dismiss time-barred claims "relate[d] to the
process by which [defendant] agreed to plead guilty" and therefore could be challenged despite

he would not have pursued this route and would have insisted on moving to dismiss the charge

that he was ACCA-eligible.  If Mr. Saxon had won his motion to dismiss the ACCA

enhancement, he would have faced a felon-in-possession charge with a Guidelines range (70 to

87 months after pleading guilty) that would have been significantly shorter than the sentence he

is currently serving.  *Williams v. United States*, No. 14-CV-0829 (KMW), 2015 WL 710222, at

*4-6 (S.D.N.Y. Feb. 19, 2015) (holding that petitioner demonstrated prejudice as a result of

counsel's failure to challenge an error in a presentence report, which subjected the defendant to a

longer sentence).  Counsel's deficient performance directly resulted in a longer sentence than

Mr. Saxon otherwise would have received, a clear showing of prejudice.

        Furthermore, prejudice is established when a defendant decides to plead guilty

based on counsel's incorrect assessment of sentencing exposure.  *See Wieland v. Buss*, 185 F.

App'x 527, 528-29 (7th Cir. 2006) (finding prejudice where trial counsel erroneously advised a

maximum sentence exposure of more than 59 years if he proceeded to trial but only 40 years if

he pleaded guilty; actual maximum sentence exposure at trial was only 43.5 years); *Moore v.

Bryant*, 348 F.3d 238, 240 (7th Cir. 2003) (finding prejudice where attorney advised defendant

that he faced 10 years if he pled guilty or 22 to 27 years if he was convicted at trial, when actual

exposure was only 12.5 to 15 years).  If a defendant relied upon "misinformation provided by an

attorney that is . . . critical to the plea decision—[such as] the length of the sentence the

defendant faces"—there is prejudice.  *Moore*, 348 F.3d at 242.  The circumstances in this case

are even more egregious than in *Wieland* and *Moore* because Mr. Saxon's counsel did not just

overstate Mr. Saxon's sentence exposure on the felon-in-possession charge, which was zero to

---

appeal waiver in plea agreement, even though claim based on attorney's mere failure to make a
motion to dismiss would be barred by waiver).  Here, trial counsel's entire strategy, beginning
with the innocence proffer, was part of the process of securing the sort of plea agreement into
which Mr. Saxon ultimately entered.

10 years rather than 15 years to life.  Rather, Mr. Saxon's sentencing exposure (both in terms of Guidelines range and statutory maximum) if he went to trial on the non-ACCA felon-in-possession charge and lost (92-115 months and 10 years maximum) was actually *lower* than his exposure under the plea agreement his trial counsel convinced him to accept (151-188 months and 20 years maximum).

The recordings of contemporaneous calls between Mr. Saxon and his trial counsel as well as trial counsel's affidavits provide additional, and well more than sufficient, evidence that counsel's deficient performance caused Mr. Saxon to accept the plea agreement.  *See United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (the "disparity [between predicted and actual sentencing exposure] provides sufficient objective evidence—when combined with a petitioner's statement concerning his intentions—to support a finding of prejudice under *Strickland*"); *see also Mask v. McGinnis*, 233 F.3d 132, 141 (2d Cir. 2000) (same).  According to trial counsel, from the outset of the case, her "conversations with Mr. Saxon—and there were many—centered on the strength of his defense, and the risks of trial *because of the mandatory minimum*."  (Ex. A (Dec. 9 2013 Trial Counsel Aff.) ¶ 4 (emphasis added).)  When she informed Mr. Saxon of the Government's offer, trial counsel stated that "[t]he *only* reason to do it is because then there is a guarantee that you're not doing 15 years or more.  It's a safety policy."  (12/17/12 Call (emphasis added).)  And on December 19, 2012—two days before Saxon pleaded guilty—counsel encouraged Mr. Saxon not to risk going to trial, explaining that he would face "probably 20 years" in prison if convicted.  (12/19/12 Call.)[11]

---

[11] In the course of advising Mr. Saxon that he should accept the plea deal, trial counsel focused on what a good deal she believed she negotiated, rather than providing a sober assessment of its risks and benefits.  (*See* 12/19/12 Call ("That was me negotiating for you, dude.  I'm a great fucking lawyer."); 12/19/12 Call ("After we hang up, you should say thank you, God, for the best

On the flip side, trial counsel advised Mr. Saxon that his sentence on the drug charges would likely be less than five years. *See supra* n.5. Accordingly, trial counsel advised Mr. Saxon that he should not take the risk of going to trial on the felon-in-possession charge because, under the plea agreement to the drug counts, his sentence would be considerably shorter than the 15-year minimum she mistakenly thought applied to the gun count.

Mr. Saxon's later attempt to withdraw his plea, just two months prior to his sentencing, confirms this showing of prejudice. *Cf. Gonzalez*, 722 F. 3d at 133 (holding that an attempt to withdraw a guilty plea "is a factor that must be considered by the court in assessing whether there is a reasonable probability that but for the substandard performance by counsel, the defendant would have chosen to eschew the plea and go to trial"). At that time, Mr. Saxon's doubts concerning the desirability of the plea agreement returned, and he expressed to his counsel a desire to withdraw his plea. (Ex. E ("jail visit/review PSR. [Defendant] wants plea back").) At the next court conference, Mr. Saxon decided to maintain his guilty plea based on his counsel's advice. (Ex. F at 3:3-5 ("Just now I had the opportunity [to] speak with [Mr. Saxon], and he actually has changed his position. He's not looking to take his plea back, he's not going to be asking you to do that.").) Mr. Saxon decided not to attempt to withdraw his plea because trial counsel persuaded him that the plea agreement remained favorable in light of the statutory minimum under ACCA. At his sentencing, trial counsel confirmed this to the Court, stating that Mr. Saxon "considered asking to withdraw his guilty plea," but ultimately "changed his mind . . . because he was looking at a 15-year mandatory minimum. . . . He knew that he was going to be looking at a 15-year minimum." (Ex. D at 27:25-28:14.) Had Mr. Saxon been informed that the ACCA enhancement never actually applied to his case, he would have insisted

fucking lawyer in the universe."); 1/23/13 Call ("I know. You should be kissing my fucking feet, man, and instead you're bugging.").)

on withdrawing his plea and proceeding to trial. *Hill*, 474 at 59 (requiring only a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty"). Mr. Saxon was prejudiced by his counsel's ineffective assistance.

## CONCLUSION

For the foregoing reasons, Mr. Saxon's conviction should be vacated. In the alternative, the Court should set an evidentiary hearing on Mr. Saxon's ineffective assistance of counsel claim.

September 3, 2015

CRAVATH, SWAINE & MOORE LLP,

By
  s/ Benjamin Gruenstein
  Benjamin Gruenstein

Attorney for Petitioner (CJA-Appointed)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
bgruenstein@cravath.com